IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| TERRI POWERS,<br><br>  Plaintiff,<br><br>vs.<br><br>THE UNITED STATES OF AMERICA,<br><br>  Defendant. | CIVIL ACTION NO.<br>1:17-CV-108 |

## COMPLAINT

COMES NOW, Plaintiff Terri Powers, for her Complaint against The United States of America, alleges and states as follows:

### PARTIES, JURISDICTION AND VENUE

1.

This is an action brought pursuant to the Federal Tort Claims Act and thus this Court has jurisdiction of this action pursuant to 28 U.S.C. § 1346(b) and 2671, et seq.

2.

The acts and omissions that are the subject of this action occurred at Albany Area Primary Healthcare, Inc., a federally funded healthcare center deemed to be an employee of the Public Health Service under the Federally Supported Health Centers Assistance Act of 1992 and 1995, 42 U.S.C. § 233(g), for purposes of any medical negligence alleged against it or its employees in regard to the care provided to Plaintiff.

3.

The acts and omissions that are the subject of this action were committed by Dr. Donovan Gowdie, in the course and scope of his employment at Albany Area Primary Healthcare, Inc., a federally funded healthcare center deemed to be an employee of the Public Health Service under the Federally Supported Health Centers

Assistance Act of 1992 and 1995, 42 U.S.C. § 233(g), for purposes of any medical negligence alleged against him in regard to the care provided to Plaintiff.

4.

In accordance with 42 U.S.C. § 233(a) and (c) and the provisions of the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1) and 2679, the United States of America is the only proper Defendant for the negligent acts alleged against Dr. Gowdie and/or Albany Area Primary Healthcare, Inc.

5.

Plaintiff timely presented her claims for personal injury to the Department of Health & Human Services on October 18, 2016. A copy of the standard Forms 95 submitted on behalf of Plaintiff are attached as Exhibit A.  The Department of Health & Human Services denied Ms. Powers' claims by letter dated March 2, 2017.  A copy of that letter is attached as Exhibit "B".  Therefore, this action is timely commenced.

6.

The events alleged herein occurred in Dougherty County, Georgia.  No real property is involved in this action.  Therefore, venue in this Court is appropriate pursuant to 28 U.S.C.A. § 1391(b).

## FACTUAL ALLEGATIONS

7.

Some time before February 7, 2014, Plaintiff, a Type II diabetic, began treatment at Albany Primary Healthcare with Dr. Gowdie for diabetic foot issues, including without limitation diabetic foot ulcer, bilateral leg and foot pain, and hallux valgus deformity (also known as a bunion).

8.

During Plaintiff's visit with Dr. Gowdie on November 5, 2014, Dr. Gowdie recommended and Plaintiff agreed to proceed with a right foot bunionectomy based on

his diagnosis of right foot hallux valgus deformity and callus of the plantar aspect of the right hallux and moderately severe symptoms of red toe and joint dislocation following unsuccessful conservative treatments.

9.

On Wednesday, January 14, 2015, Plaintiff underwent right hallux bunionectomy with internal fixation at Defendant PPMH performed by Dr. Gowdie as recommended on November 5, 2014, on an outpatient basis without noted complications (hereinafter "1/14/15 Procedure").

10.

At no time prior to the 1/14/15 Procedure did Dr. Gowdie refer Plaintiff for consultation with a cardiovascular surgeon or other physician for assessment of the vascularization and blood perfusion of her right lower leg and foot, including but not limited to ankle brachial index, complete vascular examination, ultrasound to check pulses, and/or angiography.

11.

Following the 1/14/15 Procedure, Plaintiff was placed in a hard forefoot cast with a hallux lock and was discharged home that same day with prescriptions for Percocet (a narcotic pain medication), Phenergan (medication for nausea), and clindamycin (an antibiotic) and instruction to follow up with Dr. Gowdie in one (1) week, to use crutches or a walker, keep her dressing dry and clean, to use a post-op shoe with allowance for partial weight bearing on the surgical foot.

12.

At 11:27 pm on Sunday, January 18, 2015, Plaintiff presented at the Phoebe Putney Memorial Hospital (PPMH) Emergency Department ("ED") as a triage level 4 and was subsequently seen by Nurse David Stalvey at 11:57 pm.

13.

Nurse Stalvey noted Plaintiff's right foot cast post-op from the 1/14/15 Procedure and that the right foot was reddened, swollen, with large blisters present and discoloration to the toes.

14.

Plaintiff reported a pain level of 8 out of 10 to Nurse Stalvey and that she had been vomiting for three (3) days.

15.

Nurse Stalvey did not perform an initial nursing assessment nor did he perform ongoing nursing assessments of Plaintiff, including but not limited to an examination of Plaintiff's right foot to assess pulses, capillary refill, circulation, or skin temperature.

16.

The assessments that Nurse Stalvey failed to perform constitute the bare minimum of nursing care necessary for the appropriate care and treatment of acutely ill patients such as Plaintiff as she presented to the PPMH ED on January 18, 2015.

17.

On January 19, 2015, while still at the PPMH ED:

   a. At 12:19 am the following orders were entered for Plaintiff: Nausea, Vomiting, Diarrhea protocol; CBC with Diff; Comprehensive Chem Panel; Urinalysis; and IV Access.

   b. At 12:37 am Plaintiff's lab results were available to her medical providers in her electronic medical record as follows: white blood cell count, 15.5 high; lymphocytes, 5.7 low; neutrophils 13067 high; bicarbonate 10.0 critically low; glucose 407 high; anion gap 24 high; alkaline phosphatase 130 high (hereinafter "Lab Results").

   c. At 12:40 am the results of Plaintiff's urinalysis were reported: Glucose 3+; protein 2+; blood 1+; ketones 3+ (hereinafter "Urinalysis Results").

   d. At 12:54 am 4 mg of Zofran (an anti-nausea medication) was ordered for Plaintiff.

18.

Plaintiff's lab and urinalysis results indicated that Plaintiff was in diabetic ketoacidosis (or DKA) which is a medical emergency that occurs when the body produces high levels of blood acids called ketones.

19.

DKA requires immediate inpatient admission and prompt treatment to avoid serious injuries and death.

20.

Plaintiff's lab results also indicated that Plaintiff likely was experiencing post operative infection such that Plaintiff's foot surgeon should have been called and further treatment should have been initiated to determine the cause of the infection for treatment.

21.

Plaintiff was not examined by an ED physician until 1:24 am on January 19, 2015, when she saw Dr. Michael St. Marie.

22.

Dr. St. Marie noted the following: Patient had podiatric surgery done on right foot last week; Patient on cleocin bid and has been vomiting ever since; Patient afebrile and had a blister pop from surgical dorsum right 3rd toe and drain dark blood, without foul smell;  Patient's right foot cast is remains intact; Patient's toes have good cap refill distally; Patient had three (3) or four (4) episodes of vomiting but in between has been holding down fluids fairly well; and Patient has no diarrhea or excessive thirst.

23.

Dr. St. Marie did not examine Plaintiff's right foot and his only note regarding circulation in her right foot was that she had good capillary refill.  Dr. St. Marie also

noted that peripheral pulses were strong and equal but her right foot was casted, making it impossible for him to fully check pulses in her right foot with the cast present. Despite Nurse Stalvey's note about the redness, swelling and blisters on Plaintiff's right foot and discoloration of her right toes, Dr. St. Marie made no mention of the condition of Plaintiff's right foot or toes.

24.

At 1:34 am on January 19, 2015, Dr. St. Marie diagnosed Plaintiff with nausea and vomiting as a result of a medication reaction, ordered her discharge, and noted the following: advised to stop Percocet (narcotic pain medication) as suspected cause for nausea and vomiting, advised Patient to continue on Cleocin and to call her primary physician for earlier follow-up with her podiatrist. Dr. St. Marie further noted application of Bacitracin to Plaintiff's wound site and that Plaintiff's condition at discharge was stable. Dr. St. Marie further prescribed Zofran and ordered Vancomycin (an antibiotic) 1000 mg injection and Insulin 10 units.

25.

Nearly two hours later at 3:19 am, Plaintiff's glucose was still 334 (high) and, at 4 am, Dr. St. Marie ordered another 7 units of Insulin, but Plaintiff's glucose level was still 296 (high) at 4:40 am.

26.

Five minutes after Dr. St. Marie ordered another 4 mg of Zofran at 4:47 am, Plaintiff was discharged from the ED with vital signs as follows: temperature 99.3; pulse 95; respirations 16; blood pressure 109/63; pain 4/10.

27.

At discharge, Nurse Stalvey noted: Patient leaves ED sleepy but appropriate; Patient understands medication use and instructions and will try to follow up with podiatrist today and will return if unable and gets worse.

28.

Follow-up with Plaintiff's podiatrist during regular hours on January 19, 2015, was not available due to the Martin Luther King holiday.

29.

As a result of the cast, it was impossible for Dr. St. Marie and Nurse Stalvey to fully examine Plaintiff's right foot and check for proper blood flow.  Despite the cast preventing full examination, the visible portion of Plaintiff's right foot was red, swollen, and covered in large blisters and her toes were discolored.

30.

Additionally, the increased white blood cell count with left shift (high number of immature white blood cells present), nausea and vomiting were signs that Plaintiff was experiencing post operative infection, which if left untreated could develop into systemic sepsis.

31.

Dr. St. Marie should have removed Plaintiff's surgical cast or at a minimum, split the cast in order to fully evaluate and examine her right foot and to relieve the compression, pressure and blood flow restriction the cast was causing.  Without fully viewing and examining Plaintiff's right foot, Dr. St. Marie could not determine if she had signs of infection or the extent of the impaired blood flow to her right foot, which if left untreated could ultimately cause tissue death and gangrene, and lead to amputation.

32.

Additionally, Dr. St. Marie should have immediately contacted Plaintiff's foot surgeon or the on-call surgeon to examine and treat Plaintiff.

33.

At the time Plaintiff was present in the Phoebe Putney Memorial Hospital ED, she was in obvious DKA.  Despite clear lab results, Dr. St. Marie and Nurse Stalvey failed to recognize Plaintiff's condition and discharged her.  Dr. St. Marie should have admitted Plaintiff for treatment of her DKA; however, he discharged her home instead.

34.

As instructed, on Tuesday, January 20, 2015, Plaintiff returned a day early to see Dr. Gowdie, her foot surgeon, who immediately recognized there was a serious problem and removed her cast.

35.

After the cast was removed, Dr. Gowdie's examination revealed diminished dorsalis pedis and posterior tibial pulses in the right foot, indicating blood flow to her foot had been imparied; her right foot was cool to the touch and appeared to have cellulitis (infection); she had redness around the surgical site and ischemic changes (lack of blood flow) to the 2nd and 3rd toes on the right foot; and the discoloration in her toes was a serious condition necessitating immediate hospital admission.

36.

Following Dr. Gowdie's examination, Plaintiff was readmitted to Phoebe Putney Memorial Hospital at 1:13 pm on January 20, 2015, as an urgent patient with hypothermia, hyperglycemia, nausea, sepsis, and in DKA.  During that admission, Plaintiff was diagnosed with ischemia secondary to the cast and compression of her right foot. Examination during that admission showed that her 1st, 2nd and 3rd toes on

her right foot were blue and necrotic, her forefoot was "boggy" necrotic and showed signs of cellulitis, and she had gangrene in her foot and toes.

37.

On January 21, 2015, Plaintiff's right toes and forefoot were amputated. Since that amputation, she has undergone two (2) additional amputations and has now lost her entire right foot and lower leg below the knee.

38.

The conduct of the medical care providers described herein constitutes acts of negligence and gross negligence (hereinafter collectively "negligence").

39.

The medical care providers deviated from and fell below the standard of care which under similar conditions and like circumstances ordinarily and customarily employed by the medical profession, specifically an emergency medicine physician, an emergency medicine nurse, a podiatric doctor, and the healthcare profession generally and in the area of practices, professions and specialties at issue.

40.

Had the medical care providers adhered to the proper standards of care in the medical treatment and diagnosis of Plaintiff as described hereinabove:

a. Plaintiff would not have suffered severe sepsis and DKA;

b. Plaintiff would not have suffered severe ischemia in her right foot;

c. Plaintiff would not have suffered necrosis;

d. Plaintiff would not have suffered gangrene;

e. Plaintiff would not have lost her right foot and lower leg; and

f. Plaintiff would not have undergone the extreme pain and suffering and disfigurement she has experienced since on or about January 18, 2015.

41.

Plaintiff has suffered severe, irreversible and permanent damage as a direct and proximate result of negligence and gross negligence of the medical care providers, including without limitation economic and non-economic losses.

42.

The medical care providers are liable to Plaintiff for all of her damages and losses which were incurred as a direct and proximate result of the negligence and gross negligence of the medical care providers, including without limitation general and special damages, as set forth in more detail below.

## DR. DONOVAN GOWDIE MALPRACTICE

43.

Plaintiff re-alleges Paragraphs 1-42 of this Complaint for Damages as if set forth fully herein.

44.

Dr. Donovan Gowdie, as Plaintiff's foot surgeon, and his employer Albany Area Primary Healthcare, Inc. failed to exercise the standard of care rendered by medical professionals, specifically podiatric surgeons and healthcare professionals generally, in the area of practice and specialty at issue under the same or similar circumstances.

45.

Dr. Donovan Gowdie's treatment of the Plaintiff, described herein, constitutes breaches of the standard of care including but not limited to, as follows:

a. Dr. Donovan Gowdie failed to obtain a full vascular work up to assess Plaintiff' right lower leg and foot perfusion and vascularization prior to the 1/14/15 Procedure, in spite of the fact that she had noted diminished sensation in her lower legs and feet and a known history of other foot ulcerations with infection, osteomylitis, and difficulty in wound healing; and

b. Despite Plaintiff's known diabetic condition, decreased sensation as a result of diabetic neuropathy, prior problems with ulceration, and lack of evaluation

for perfusion and vascularization, Dr. Donovan Gowdie applied a hard cast which inhibited the circulation in Plaintiff's lower leg and foot and lead to ischemia, infection, tissue death, gangrene and amputation.

46.

Dr. Donovan Gowdie was negligent and deviated from the appropriate standard of care in the treatment of Plaintiff.

47.

But for the breach of the standard of care by Dr. Donovan Gowdie as set forth above, Plaintiff would not have suffered the permanent injury and loss.

48.

As a result, Plaintiff has suffered, and will continue to suffer, economic damages, including past and future medical expenses, pain and suffering, loss of enjoyment of life, loss of ability to labor, permanent and irreversible damage, and severe emotional trauma and distress.

49.

Breach of the applicable standard of care by Dr. Donovan Gowdie in the treatment of Plaintiff was the proximate cause of Plaintiff's injuries and damages.

50.

Plaintiff has attached hereto as Exhibit C and files contemporaneously herewith, the Affidavit of Dr. Steven Spinner, in full compliance with O.C.G.A § 9-11-21, although full compliance is not mandated by the Federal Rules of Civil Procedure.

51.

Plaintiff's claims against ED Physician St. Marie and ED Nurse Stalvey are pending in this court pursuant to Civil Action No. 1:17-CV-71 (WLS), <u>Terri Powers v. David Stalvey, et. al.</u>

52.

Plaintiff is entitled to be compensated for all injuries and losses in an amount which will be proven at trial.

53.

Defendant The United States of America is liable for the injuries and damages suffered and incurred as a result of the conduct of its employees and/or agents, Dr. Donovan Gowdie and/or Albany Area Primary Healthcare, Inc.

WHEREFORE, Plaintiff Terri Powers, prays as follows:

a) That judgment be entered against Defendant in an amount sufficient to compensate for the special and general damages incurred as the result of her personal injuries;

b) That the costs of this action be taxed against Defendant; and,

c) That Plaintiff have such other and further relief as the Court deems appropriate under the circumstances.

Respectfully submitted, this 9th day of June, 2017.

**ADAMS, JORDAN & HERRINGTON, P.C.**
**BY:**

/s/ Virgil L. Adams
Virgil L. Adams
Georgia Bar No.: 004625
Caroline W. Herrington
Georgia Bar No.: 153008

577 Mulberry Street, Suite 1250
P. O. Box 928
Macon, Georgia  31202-0928
Ph:  (478) 743-2159
Fax: (478) 743-2159

          **BRIMBERRY, KAPLAN & BRIMBERRY, P.C.**
          **BY:**

          /s/Alex. J. Kaplan
          Alex J. Kaplan
          Georgia Bar No.: 406776

P. O. Box 1085
Albany, Georgia 31702-1085
Ph: (229) 436-0537          *Attorneys for Plaintiff*
Fax: (229) 436-5024

13

**PLEASE SERVE DEFENDANT, AS FOLLOWS:**

The United States of America
c/o  G.F. Peterman, III U.S. Attorney and
     Stewart Brown, Assistant U.S. Attorney
Middle District of Georgia, Macon Division
300 Mulberry Street, Fourth Floor
Macon, Georgia  31201
*Via Personal Service*

Jeff Sessions, Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001
*Via Certified Mail # 7016 1970 0000 8191 7843*
*Return Receipt Requested*

Dr. Thomas E. Price, Secretary
Department of Health & Human Services
200 Independence Avenue, S.W.
Washington, DC  20201
*Via Certified Mail # 7016 1970 0000 8191 7836*
*Return Receipt Requested*